# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| VICTOR MENENDEZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  4:21-CV-914 |
| | § | Judge Mazzant |
| TIMBERBLINDS, LLC; PETER | § | |
| BOLENEUS; and HUNTER DOUGLAS, | § | |
| INC., | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff's Motion to Remand (Dkt. #8).  Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

The parties' dispute arises from the events surrounding Plaintiff Victor Menendez ("Menendez")'s employment at Timberblinds, LLC ("Timberblinds").[1]

### I.     Factual Background

Menendez has been in the indoor/outdoor blinds and shades industry for over twenty-five years and operated his own company, Extravagant Design, LLC, d/b/a EX Design Group ("EX Design") from 2004 to 2017 (Dkt. #4 ¶ 8).  In 2013, Menendez invented a product called: "Hem Bar for Use with Architectural Structure Covering" (the "Hem Bar"), which was designed to maintain the stability and utility of outdoor shades—especially in inclement weather (Dkt. #4 ¶ 9).

---

[1] The Court bases its summary of the events leading up to this lawsuit on the allegations in Menendez's Original Petition in state court.

In 2016, Menendez decided to expand EX Design and began discussions with Timberblinds' president, Defendant Peter Boleneus ("Boleneus") (Dkt. #4 ¶¶ 10–11).  Based on these discussions, it was agreed that Timberblinds would hire Menendez as the Vice President of Timberblinds' Outdoor Products Division and purchase certain assets of EX Design (Dkt. #4 ¶¶ 13, 19).

Timberblinds and Menendez memorialized their understanding of the purchase of EX Design, employment of Menendez, and a related loan in four separate agreements: (1) an Employment Agreement (Dkt. #4, Exhibit 2), (2) an Asset Purchase Agreement (Dkt. #4, Exhibit 1), (3) a Loan and Repayment Agreement (Dkt. #4, Exhibit 3), and (4) a Promissory Note (Dkt. #4, Exhibit 4) (collectively, the "Agreements").  The Agreements between Timberblinds and Menendez included general assignment provisions allowing Timberblinds to assign all of its rights and obligations to an affiliate.  All of the Agreements except the Asset Purchase Agreement were later assigned by Timberblinds to Hunter Douglas, Inc. ("Hunter Douglas"), Timberblinds' parent company (Dkt. #13 at p. 9).

As the Vice President of Timberblinds' Outdoor Division, Menendez was tasked with the design, production, marketing, sale, and installation of all outdoor products (Dkt. #4 ¶ 19).  In this role, Menendez worked directly with Boleneus.  At some point, Menendez's relationship with Timberblinds and Boleneus began to sour.  According to Menendez, his ability to meet his obligations under the Agreements was critically thwarted by Boleneus' wrongful interference and harassment (Dkt. #4 ¶ 55).  More specifically, Menendez alleges that Boleneus repeatedly denied Menendez's requests for appropriately skilled employees and equipment; disregarded Menendez's concerns regarding quality control and end-user safety during manufacturing; ordered Menendez to terminate, without cause, seven important Outdoor Division team members; and undermined Menendez in front of his team by making false and baseless accusations of insubordination and

self-dealing (Dkt. #4 ¶¶ 26–31).  In addition, Menendez alleges that he was harassed, threatened, and ultimately coerced by Boleneus into transferring or relinquishing his own property that was not included in the Asset Purchase Agreement, such as EX Design's phone number, website, and proprietary customer list, as well as a Bobcat MT55 Track Loader leased by Menendez in his own his name (Dkt. #4 ¶¶ 35–37).

Similarly, Menendez claims Boleneus, Timberblinds, and Hunter Douglas (collectively, the "Defendants") repeatedly pressured and harassed Menendez to sign an assignment of all of his rights in the Hem Bar to Hunter Douglas, though this invention was not listed in the Asset Purchase Agreement (Dkt. #4 ¶ 39).  When Menendez refused, Menendez claims Timberblinds, Boleneus, and/or Hunter Douglas forged Menendez's signature on a document purporting to assign all intellectual property rights in the Hem Bar invention, including the right to patent, to Hunter Douglas (Dkt. #4 ¶¶ 40–42).  On June 22, 2018, Hunter Douglas recorded this purported assignment with the United States Patent and Trademark Office ("USPTO") and filed an application to patent Menendez's Hem Bar in its own name (Dkt. #4 ¶¶ 41, 43).

Ultimately, in January of 2021, Timberblinds informed Menendez that it was merging the Outdoor Division with a newly purchased company and transitioning Menendez into a sale position (Dkt. #4 ¶ 45).  Given that the Employment Agreement stated that Menendez was to be employed "in an executive position as the Vice President of [Timberblinds'] outdoor product division" through December 31, 2021, and in light of the conduct by Boleneus, Menendez declined to remain at Timberblinds and tendered his resignation in March of 2021 (Dkt. #4 ¶¶ 46–48).

## II.    Procedural Background

The dispute from the events surrounding Menendez's employment at Timberblinds resulted in three separate lawsuits.

On June 15, 2021, Menendez filed the first suit in the United States District Court for the Eastern District of Texas seeking declaratory relief, injunctive relief, and damages against Hunter Douglas for filing the fraudulent assignment of the Hem Bar invention bearing Mendez's forged signature.   Menendez further requested a writ of mandamus directing the USPTO and its commissioner to halt prosecution of the Hem Bar patent application under Hunter Douglas' name (*see Menendez v. Hunter Douglas Inc. et al*, Case No. 4:21-cv-00451).  Following the filing of this action, Hunter Douglas, on September 22, 2021, unilaterally assigned all of its purported rights in the Hem Bar invention to Plaintiff (Dkt. #4 ¶ 50).

On September 24, 2021, Hunter Douglas initiated the second suit in the United States District Court for the Eastern District of Texas against Menendez for breach of contract and breach of the duty of loyalty (*see Hunter Douglas v. Menendez*, Case No. 4:21-cv-00741).

On October 14, 2021, Menendez initiated the underlying action in the 416th Judicial District Court of Collin County, Texas against the Defendants.   Menendez and Boleneus are citizens of Texas (Dkt. #4 ¶¶ 2, 5).  Likewise, Timberblinds is a limited liability company and alleged to be a citizen of Texas (Dkt. #4 ¶ 3).[2]  Hunter Douglas is a Delaware corporation with its principal place of business located in New York and is thus a citizen of Delaware and New York for diversity purposes (Dkt. #4 ¶ 5).  The Original Petition ("Petition") alleges various tort and contract claims against Defendants.   For example, Menendez asserts claims for constructive termination, breach of contract, theft and conversion of Menendez's personal property, as well as theft and misappropriation of his Hem Bar and trade secrets.  Defendants were served with a copy of the summons and Petition on October 19, 2021 (Dkt. #1, Exhibit A).

---

[2] The citizenship of a limited liability company is determined by the citizenship of its members. *Harvey v. Grey Wolf Drilling Co*., 542 F.3d 1077, 1080 (5th Cir. 2008). Without a list of Timberblinds' members or their respective citizenship, the Court lacks necessary information to conclusively determine Timberblinds' citizenship.  However, both sides agree that Timberblinds is a Texas citizen for diversity purposes.

On November 18, 2021, Hunter Douglas removed the case to this Court on the basis of federal diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441 (Dkt. #1 ¶ 7).  Hunter Douglas asserts there is diversity jurisdiction because the real parties in interest, Menendez and Hunter Douglas, are diverse, and the amount in controversy exceeds the statutory threshold (Dkt. #1 ¶¶ 6–7).  Hunter Douglas also asserts that both Timberblinds and Boleneus consent to removal, though their consent is not necessary since they are not properly named parties (Dkt. #1 ¶ 38).  On December 1, 2021, Menendez filed a motion to remand (Dkt. #8).  Menendez argues that this Court should remand this action since Menendez, a Texas citizen, asserts state law tort and contract claims against Timberblinds and its president, Boleneus, both of whom are also citizens of Texas (Dkt. #8 at p. 5).  On December 16, 2021, Hunter Douglas filed its response (Dkt. #13).  On December 23, 2021, Menendez filed his reply, (Dkt. #17), and on January 3, 2022, Hunter Douglas filed its sur-reply (Dkt. #18).

## LEGAL STANDARD

A defendant may remove any civil action from state court to a district court of the United States which has original jurisdiction.  28 U.S.C. § 1441.  District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.  The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Weaver v. Zurich Am. Ins. Co.*, No. Civ. A. H–10–1813, 2010 WL 3910053, at *1 (S.D. Tex. Oct.1, 2010).  The removal statute must "be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).  A district court is required to remand the case to state court if,

at any time before final judgment, it determines that it lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c); *Groupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).

For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1), there must be complete diversity of citizenship between plaintiffs and defendants. 28 U.S.C. § 1332.  In determining whether complete diversity exists, a federal court "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).  To establish that a non-removing defendant is a nominal party, the removing party must show that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendant in state court. *Farias v. Bexar Cty. Bd. of Trs. for M.H.M.R. Serv.*, 925 F.2d 866, 871 (5th Cir. 1991) (citing *B. Inc. v Miller Brewing Co*., 663 F.2d 545, 549 (5th Cir. 1981).

Like the nominal party test, "[t]he improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citing *McDonal v. Abbott Labs*., 408 F.3d 177, 183 (5th Cir. 2005)).  Under the improper joinder doctrine, a case involving a nondiverse defendant may nevertheless be removed to federal court if it is established that the nondiverse defendant was improperly joined. *See id.* "[T]he purpose underlying the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined. Thus, the focus of the inquiry must be on the joinder, not on the merits of the plaintiff's case." *Id.* (citation and quotation marks omitted).  "The party seeking removal bears a heavy burden of proving that the joinder of the in-state [defendant] was improper." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc).  If the party fails to meet this burden and joinder of the in-state party was proper, removal will be inappropriate, and the federal court will not have subject-matter jurisdiction. *Id.* at 575.

To establish improper joinder, the party seeking removal must demonstrate either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state." *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).  The party alleging improper joinder bears the burden of persuasion and that burden is quite stringent. *Lott v. Dutchmen Mfg., Inc.*, 422 F. Supp. 2d 750, 753 (E.D. Tex. 2006); *see Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000) ("The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one.").  When, as here, the defendant argues the latter method, the test "is whether the defendant has demonstrated that . . . there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

To determine whether a plaintiff has a reasonable basis of recovery under state law, "[t]he court may [either] conduct a Rule 12(b)(6)-type analysis . . . [or], in its discretion, pierce the pleadings and conduct a summary inquiry." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016) (second and third alterations in original) (quoting *Smallwood*, 385 F.3d at 573).  The Fifth Circuit has held that the federal pleading standard, rather than the state pleading standard, applies in the improper joinder context. *Id.* at 208.  Further, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573–74.

## ANALYSIS

Hunter Douglas removed this case based on diversity jurisdiction under 28 U.S.C. § 1332. It is undisputed that complete diversity exists between Menendez—an individual domiciled in Texas—and Hunter Douglas—a corporation organized under the laws of Delaware with its

principal place of business in New York (*See* Dkt. #4 ¶¶ 2–5). Similarly, it is undisputed that the amount-in-controversy requirement is met in this case. However, the other two defendants in this case—Timberblinds and Boleneus—are citizens of Texas. As to these non-diverse defendants, Hunter Douglas asserts that they were improperly joined because (1) Timberblinds is a nominal party and (2) Menendez fails to establish a cause of action against Boleneus (Dkt. #1 at p. 9).

In response, Menendez moves to remand the case back to the 416th Judicial District Court of Collin County, Texas (Dkt. #8 at p. 6). Menendez contends that Timberblinds and Boleneus are properly joined, and diversity of citizenship is, therefore, lacking (Dkt. #8 at p. 5). Additionally, Menendez asks for attorneys' fees incurred in bringing this motion because Hunter Douglas "lacked an objectively reasonable basis to remove this case" (Dkt. #8 at p. 18). The Court will address these issues in turn. But before turning to the heart of the parties' dispute, the Court finds it helpful to first resolve two threshold issues.

## I.      Appropriate Test for Nominal Party/Improper Joinder

In its notice of removal, Hunter Douglas contends that Timberblinds was "improperly joined because Timberblinds is a nominal party with no real interest in the litigation . . . ." (Dkt. #1 at p. 9). Thus, whether Timberblinds is a proper party for diversity purposes depends on whether it was improperly joined and/or a nominal party. However, there is confusion surrounding the overlap of these doctrines. Indeed, both parties rely on and interweave language from both doctrines to support their arguments.

As an initial matter, the Court notes the lack of clarity on whether the test for establishing that a party is a nominal party is the same test for establishing that a party has been improperly joined.[3] This lack of clarity is seen throughout the parties' briefing—each side pulls language

---

[3] Some courts in the Fifth Circuit have found the tests to be the same. *See, e.g., Schmelzer v. Nationstar Mortg., LLC*, No. 4:16-cv-389, 2016 WL 4368735, at *2 (E.D. Tex. Aug. 16, 2016) (collecting cases); *Veritas Consulting Grp., Inc.*

favorable to its position from the jurisprudence of both doctrines (*compare* Dkt. #8 at p. 13 ("The test of whether or not a named defendant is a nominal party is if his role in the lawsuit is that of a depositary or stakeholder.")), *and* (Dkt. #13 at p. 19 ("The crux of the analysis remains whether, given the facts of this case, Timberblinds is an indispensable party . . . .")), *with* (Dkt. #8 at p. 11; Dkt. #13 at p. 11 (recognizing that to establish improper joinder, Hunter Douglas must prove that "there is no reasonable basis for the district court to predict that [Menendez] might be able to recover against [Timberblinds]")).  While the improper joinder and nominal party analyses involve many of the same considerations, the precise language and phrasing of courts' analyses can differ with each doctrine.  This leads to some inconsistencies in this area of the law, particularly, where, as here, a party asserts a court should disregard the citizenship of a certain party because it is a nominal party who is improperly joined.  However, the Court need not delineate the scope of these doctrines precisely because it finds the dispositive question under both to be the same.[4]  The Court finds it important to explicitly state this because the precise wording of the proper test is central to both the outcome in this case as well as the Court maintaining consistency in its decisions of the related cases between the parties.

While older cases reflect different variations of the tests, the Fifth Circuit has clarified the bottom-line concern under both tests.  In 2004, in a seminal improper joinder case, the Fifth Circuit held that the test for improper joinder "is whether the defendant has demonstrated that there is no

---

*v. Gasbuddy Org.,* No. 10-147, 2010 WL 2598386, at *2 n. 2 (S.D. Tex. June 24, 2010) ("[T]he analysis for whether a party is nominal is the same analysis for whether a party is improperly joined."); *see also Salazar v. Allstate Tex. Lloyd's, Inc*., 455 F.3d 571, 574 (5th Cir. 2006) ("In the paradigmatic fraudulent joinder case, a plaintiff sues a nominal nondiverse/in-state defendant along with a diverse foreign defendant in an effort to make sure that its claims against the diverse defendant stay in state court."); *but see Lassberg v. Bank of Am., N.A*., 660 F. App'x 262, 266 (5th Cir. 2016) (nonprecedential) (stating two separate tests for determining improper joinder and nominal parties); *Acosta v. Master Maintenance & Construction Inc.*, 452 F.3d 373, 379 (5th Cir. 2006) (determining that a party was nominal without mentioning any heavy burden or inquiring whether there is any possibility of stating a claim).

[4] The Court also notes that Hunter Douglas concedes that the improper joinder test is appropriate in this case (*See* Dkt. #1 at p. 7 ("To determine if the served defendants here are real parties in interest, the Court looks to the improper joinder standard.")).

possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.  Similarly, while early on, the Fifth Circuit, citing to Connecticut and Michigan decisions, defined a nominal party as either a mere depositary stakeholder or an unnecessary or dispensable party, *see Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen & Assistants' Local 349, Int'l. Printing Pressmen & Assistants' Union of N. Am.*, 427 F.2d 325, 327 (5th Cir. 1970), the modern Fifth Circuit later incorporated the improper joinder test into its nominal-party jurisprudence.  *See Farias*, 925 F.2d at 871 (citing *B., Inc.*, 663 F.2d at 549, an improper-joinder case for its test of determining nominal parties).  In *Farias*, the Court held that "[t]o establish that non-removing parties are nominal parties, 'the removing party must show . . . that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court.'" *Id.* at 871 (quoting *B., Inc.*, 663 F.2d at 549).

Accordingly, the tests for nominal party and improper joinder both hinge on the same question: whether there is a possibility that the plaintiff (Menendez) can establish a valid cause of action against the in-state defendant (Timberblinds). *See Farias*, 925 F.2d at 871; *Smallwood*, 385 F.3d at 573.  As such, this will be the guiding inquiry for the Court—not, as the parties argue, whether Timberblinds is "depositary or stakeholder," "a necessary and indispensable party" or a "real party in interest."  With this important threshold matter resolved, the Court now turns to the second preliminary dispute between the parties—the appropriate means for predicting whether Menendez has a reasonable basis of recovery against Timberblinds under state law.

## II.        Standard of Review—Rule 12(b)(6)-Type Analysis or Summary Inquiry

The Fifth Circuit has set out two avenues for determining whether there is a reasonable basis to predict that a plaintiff might recover against a defendant under state law. *See Smallwood*, 385 F.3d at 573.  "[A] court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both." *Int'l Energy*, 818 F.3d at 207 (emphasis in original). This decision "lies within the discretion of the trial court." *Flagg v. Stryker Corp.*, 819 F.3d 132, 137 (5th Cir. 2016) (internal quotation marks and brackets omitted).

Under the first test, the court "may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573.  Importantly, federal—not state— pleading standards apply when conducting this analysis. *Int'l Energy*, 818 F.3d at 208.  However, in rare cases, where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.  The Fifth Circuit has cautioned that this "inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573–74.  In conducting this summary inquiry, a court "may consider summary judgment-type evidence in the record but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649 ("Any contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor.").  Thus, "although th[is] type of inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a

standard closer to the Rule 12(b)(6) standard." *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004).

Here, Hunter Douglas argues that the allegations in the Petition fail to state a claim against Timberblinds and Boleneus under the 12(b)(6) standard (Dkt. #13 at p. 12).  In the alternative, "because Menendez has omitted or misstated discrete facts that would determine the propriety of joining Timberblinds and Boleneus[,]" Hunter Douglas requests that the Court make a summary-judgment-like inquiry (Dkt. #13 at p. 12).  Menendez responds that a summary inquiry is not appropriate because all relevant jurisdictional facts are present in the Petition, and thus the Court should limit its inquiry into the pleadings (Dkt. #8 at p. 13).  Because the Court finds that the dispute turns on the Agreements between the parties, which are attached to the Petition, the Court does not find it necessary to pierce the pleadings and instead opts to conduct a 12(b)(6) analysis. *See Int'l Energy*, 818 F.3d at 207 ("[A] court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both.").  Further, as Menendez notes, the Petition states that Timberblinds purportedly assigned the Agreements to Hunter Douglas.  Thus, the Petition and its attachments contain the information necessary for the Court's determination of whether remand is appropriate.[5]

With these preliminary issues resolved, the Court turns to the heart of the dispute—whether Timberblinds and Boleneus were improperly joined as nominal parties.  Because Hunter Douglas

---

[5] The Court notes that had it not found the Agreements and assignment of them to be the dispositive issue, its decision to not pierce the pleadings would have been much more difficult.  On the one hand, the Court finds Hunter Douglas' claims that Menendez omitted important details regarding Hunter Douglas' use of the EX Design phone number, website, customer list, the Hem Bar invention, and the Bobcat—details critical to Menendez's theft of personal property and conversion claims—compelling.  Further, Menendez did not dispute any of these claims or produce information contradicting the affidavits.  On the other hand, the array of extrinsic evidence that Hunter Douglas asks the Court to consider appears to stretch the limits of the "discrete and undisputed facts" that the Court is allowed to consider at this stage. *See Smallwood*, 385 F.3d at 574 fn.12 (noting that discrete and undisputed facts are those "that easily can be disproved if not true.").  However, because the Court finds the Agreements in this case to be dispositive, the Court ultimately need not answer the more difficult question.

must show that Timberblinds and Boleneus were both improperly joined for complete diversity to

exist, the Court conducts its analysis individually with each party, beginning with Timberblinds.

### III.     Was Timberblinds Improperly Joined as a Nominal Party?

The central dispute between the parties is the effect of the assignment of the "relevant"[6]

Agreements from Timberblinds to Hunter Douglas.  As noted, the central inquiry for improper

joinder of a nominal party is "whether the defendant has demonstrated that there is no possibility

of recovery by the plaintiff against [the] in-state defendant." *Smallwood*, 385 F.3d at 573.  As such,

Hunter Douglas contends that "Menendez could not bring a claim in state court (or otherwise)

against Timberblinds" because Timberblinds assigned all of its rights and obligations in the

contracts to Hunter Douglas, its parent company, "and therefore [Timberblinds] is not a real party

of interest" (Dkt. #13 at pp. 13–14).  Thus, Hunter Douglas' argument depends on whether

Timberblinds' assignment to Hunter Douglas of the Agreements precludes Menendez from stating

a claim against Timberblinds.  In support of its argument, Hunter Douglas cites several Fifth

Circuit cases and out-of-circuit cases that stand for the proposition that "an assignor is no longer a

real party in interest" (Dkt. #13 at p. 13 (citing *Hallman v. Safeway Stores, Inc.,* 368 F.2d 400, 403

(5th Cir. 1966))).

Menendez contests Hunter Douglas' argument that the assignment by Timberblinds

extinguished any breach of contract claim Menendez might assert against Timberblinds, pointing

to two distinct lines of case law (Dkt. #8 at p. 14).  First, Menendez contends that "the Fifth Circuit

has long held that when a subsidiary is the primary participant in events giving rise to a suit

involving its parent corporation, the subsidiary must be joined" (Dkt. #8 at p. 14 (citing *Dernick*

---

[6] Hunter Douglas asserts that only the Employment Agreement, Loan and Repayment Agreement, and Promissory Note Agreement were assigned by Timberblinds to Hunter Douglas, not the Asset Purchase Agreement (Dkt. #13 at pp. 9–10).  However, Hunter Douglas also claims the assigned Agreements are the only relevant ones because Menendez does not in fact assert an actual claim under the Asset Purchase Agreement  (Dkt. #13 at p. 9).

*v. Bralorne Res., Ltd.*, 639 F.2d 196, 199 (5th Cir. 1981))).  However, the Court finds this argument to be unconvincing.  As Hunter Douglas points out, the cases that stand for this proposition are readily distinguishable because none of them involve a complete assignment of a claim or contract. *See Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985); *Dernick*, 639 F.2d at 199.  Further, these cases focus on whether a party was necessary or indispensable to the action— an inquiry that this Court has already noted is not the dispositive inquiry in this case. *See id.* Second, Menendez argues that the purported assignment does not preclude Menendez from stating a claim against Timberblinds because "Texas law is well settled that 'a party cannot escape its obligations under a contract merely by assigning the contract to a third party'" (Dkt. #8 at p. 14 (quoting *Seagull Energy E&P, Inc. v. Eland Energy Inc.*, 207 S.W.3d 342, 346–47 (Tex. 2006))). The Court finds this argument more persuasive.

Indeed, Menendez's authorities that recognize "a party cannot escape its obligations under a contract merely by assign[ment]" stand in stark opposition to Hunter Douglas' authorities acknowledging that "an assignor . . . is no longer a real party in interest." *Compare Seagull*, 207 S.W.3d at 346, *with Hallman*, 368 F.2d at 403.  At first glance, these propositions seem irreconcilable.  However, upon closer inspection, Menendez's cases are more on point for resolution of the dispositive inquiry in this case.  As Menendez notes, the Fifth Circuit cases that Hunter Douglas cites "primarily address whether a *plaintiff*, who has assigned its rights against the defendants to another party, remain a real party in interest to the action" (Dkt. #17 at p. 7). However, they do not provide that a "*defendant* may evade liability by assigning the contract it is charged with breaching to a third party" and "for good reason" (Dkt. #17 at p. 8).  That is because under Texas law, it is well established that a defendant "cannot escape its obligations under a contract merely by assigning the contract to a third party" (Dkt. #17 at p. 8 (citing *Seagull*, 207

S.W.3d at 347)).  And here, the focus is on the consequences of an assignment by the *defendant*, Timberblinds—not the plaintiff.  As such, Menendez's case law is more akin to the current situation.  Tellingly, in response to Menendez's argument that Hunter Douglas' authorities address whether *plaintiffs* who have assigned rights remain real parties in interest, not whether *defendants* can evade liability through assignment, Hunter Douglas points to no Fifth Circuit case law or Texas law that holds otherwise.  In fact, while Hunter Douglas cites to a case from the Northern District of Texas, that case also deals with the effect of an assignment by a plaintiff, not a defendant. *See UICI v. Gray*, No. 3:01-cv-0921, 2002 WL 356753, at \*6 (N.D. Tex. Mar. 1, 2002).  Further, the Court does not find Hunter Douglas' other case law, cases from Florida district courts, to be persuasive in this situation—especially in the face of conflicting Texas precedent.

By contrast, the Court finds the Texas law cited by Menendez to be compelling: "[A] party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract." *Seagull*, 207 S.W.3d at 347.  And while Hunter Douglas argues that "Menendez's attempt to characterize this as a broad principle of jurisprudence . . . does not pass muster," (Dkt. #18 at p. 7), the Court finds to the contrary.[7]  Texas courts have repeatedly held that an assignment does not relieve the assignor of liability in various contexts. *See Jones v. Cooper Indus. Inc.,* 938 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (examining assignment of patent); *Univ. of Tex. Med. Branch v. Allan*, 777 S.W.2d 450, 452–53 (Tex. App.—Houston [14th Dist.] 1989, no writ) (considering assignment of

---

[7] Hunter Douglas also contends that the cases cited for this proposition stem "from an old and limited line of authorities that appear to deal with the particularities of certain contracts in the oil, gas, and/or energy industry" (Dkt. #13 at p. 17 n.9).  The Court disagrees.  While *Seagull* itself dealt with contracts pertaining to mineral interests, along with some of the authorities stating the same principle, nothing in *Seagull* suggests that the Court was limiting its analysis of assignments to this context. *See Seagull*, 207 S.W.3d at 345.  Indeed, "[n]othing in *Seagull* turns on the nature of the assignment . . . Instead, *Seagull* provides a framework for determining the consequences of an assignment when a contract does not otherwise expressly provide for the consequences of such assignment, and there is no release given by the oblige." *Texas v. Am. Tobacco Co*., 441 F.Supp.3d 397, 437 (E.D. Tex. 2020).

insurance benefits from patient to hospital); *see also Am. Tobacco Co*., 441 F. Supp. 3d. at 438–39 (analyzing assignment of settlement agreement under Texas law).   Further, this general principle is recognized by statute and the Restatement. *See* TEX. BUS. & COM. CODE § 2.210(a) ("No delegation of performance relieves the party delegating of any duty to perform or any liability for breach."); Restatement (Second) of Contracts § 318(3) ("Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor.").

Notably, the error in Hunter Douglas' argument is that it assumes that the consequences of an assignment of the rights—as well as the obligations—under a contract are the same.   But, under Texas law, the consequences of an assignment are different depending on whether a Court is looking at the assignor's assignment of rights or obligations.   For example, upon assignment of a *right*, the assignor's interest in that *right* is extinguished. *See Nelson v. Vernco Const., Inc*., 406 S.W.3d 374, 378 (Tex. App. —El Paso 2013, pet. granted) ("When an assignor of a cause of action has not retained some right or interest in the cause of action, the assignor is barred from bringing suit.") (collecting cases), *judgment rev'd on other grounds*, 460 S.W.3d 145 (Tex. 2015).   This principle is exhibited by Hunter Douglas' argument and line of cases in support (*See* Dkt. #13 at p. 13) (citing cases that generally stand for the proposition that upon assignment, an assignor is precluded from bringing suit because the assignee becomes the real party in interest).   Applying this principle of law to the facts, Timberblinds' *rights*, as the assignor, to the contract were extinguished upon assignment.   Thus, as Hunter Douglas recognizes, Timberblinds is barred from bringing suit against Menendez under the Agreements—only Hunter Douglas as the assignee could (*see* Dkt. #13 at p. 13 ("Accordingly, Timberblinds, as the assignor, could not bring a claim against Menendez under the contracts.")).

However, this does not mean that the assignment precludes Menendez from bringing suit against Timberblinds.  After recognizing that Timberblinds, as the assignor, could not bring a claim against Menendez, Hunter Douglas argues that "[c]onversely, Menendez could not bring a claim in state court (or otherwise) against Timberblinds under the contracts" (Dkt. #13 at p. 14).  But that is not true—just because Timberblinds is barred from bringing suit against Menendez does not inversely mean that Menendez is barred from bringing suit against Timberblinds.  Again, the consequences of an assignment of rights (ability to bring suit) and obligations (liability to suit) are different.  Tellingly, after making this statement, Hunter Douglas cites no case law. Nor could it. Because under Texas law, "a party cannot escape its *obligations* under a contract merely by assigning the contract to a third party." *Seagull*, 207 S.W.3d at 346–47 (emphasis added).  Rather, under Texas law, an assignor remains liable unless expressly or impliedly released by the other party to the contract. *Id.* at 347.

Applying this principle to the facts, Timberblinds' assignment to Hunter Douglas by itself did not relieve Timberblinds of liability under the contracts.  Instead, Timberblinds remains liable "unless expressly or impliedly released by [Menendez] to the contract[s]." *See id*.  Accordingly, the critical question for whether Menendez can establish a cause of action against Timberblinds in state court is whether Menendez expressly or impliedly released Timberblinds from the Agreements.  If Timberblinds was not released from liability by Menendez, then Timberblinds remains liable to suit even after the assignment.  However, if Menendez released Timberblinds from its liability under the Agreements, then there would be no possibility of recovery by Menendez against Timberblinds for a breach of contract claim.  Therefore, the Court turns to

examine whether the parties' Agreements[8] indicate—either expressly or impliedly—that the obligations were intended to survive assignment. *See id.*

### A. Was Timberblinds Expressly or Impliedly Released from the Agreements by Menendez?

Hunter Douglas makes two arguments as to why Timberblinds was released of liability under the Agreements through assignment to Hunter Douglas.  First, Hunter Douglas contends that since "the parties expressly bargained for assignment terms . . . that allow Timberblinds to assign and transfer all rights and obligations to an affiliate like Hunter Douglas *without* any notice to Menendez," Menendez's release of the liabilities was not required (Dkt. #13 at p. 17).  Second, Hunter Douglas argues that the facts "show, if not expressly, Timberblinds was at least impliedly relieved of its duties or liabilities under the contract" because "Menendez consistently looked to Hunter Douglas for performance under the contract" (Dkt. #18 at pp. 8–9).  The Court finds neither of these arguments to be persuasive.

An unambiguous contract must be interpreted by the court as a matter of law. *SAS Institute, Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005).  If a contract "is worded so that a court can give it a certain or definite legal meaning or interpretation, it is not ambiguous." *Fulcrum Central v. AutoTester, Inc.*, 102 S.W.3d 274, 277–78 (Tex. App.—Dallas 2013, no pet.).  Further, in all contract cases, the task of the court "is to ascertain the parties' true intentions as expressed in the language they chose." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015) (citing *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014)).  To do so, Texas courts "examine the entire agreement and seek to harmonize and give effect to all

---

[8] Though a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Menendez attached the Agreements to his Petition, so it is proper for the Court to examine them.

provisions so that none will be meaningless." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)).

> Here, the assignment provision in the Employment Agreement reads:

> This Agreement, and Employee's rights (other than the right to receive compensation earned by Employee hereunder) and obligations hereunder, may not be assigned by Employee. The Company may assign its rights hereunder, together with its obligations, to any Affiliate, or in connection with any sale of all or substantially all of the equity of the Company, or any sale, merger or consolidation into or with an entity which is not an affiliate of the Company, or any sale, transfer or other disposition of all or substantially all of the business or assets of the Company or any of its Affiliates, to the buyer, the surviving or resulting corporation or the transferee, as the case may be, in which event this Agreement shall not terminate, and Employee shall nevertheless remain bound by the provisions hereof. Any successor to the Company hereunder shall also be bound by the provisions hereof.

(Dkt. #4, Exhibit 2 § 11).  Likewise, the assignment provisions in the Loan and Repayment Agreement and Full Recourse Promissory Note Agreement provide similar terms—making Timberblinds' right to assign unrestricted, while restricting Menendez's right to assign contingent on Timberblinds' written approval (Dkt. #4, Exhibit 3 and 4).

> Neither party argues that the Agreements are ambiguous.  Further, a plain reading of the Agreements leads the Court to the conclusion that the Agreements are unambiguous, and the Court, therefore, will interpret its meaning as a question of law.  After reviewing the Agreements, the Court finds that the Agreements neither provide for an express valid release of Timberblinds' liabilities and responsibilities nor do the Agreements' subjects or other circumstances indicate that Timberblinds' obligations were not intended to survive assignment. *See Seagull*, 207 S.W.3d at 347.

> The Court finds the Texas Supreme Court's analysis in *Seagull* to be instructive. *See id.*  In *Seagull*, the court addressed the scope of assignor liability after a dispute arose between two parties

over whether an assignor remained liable after assigning its interest in a contract. *Id.* at 344.  The dispute turned "on whether the parties to the operating agreement expressly agreed upon the consequences that should follow an assignment of one's interest to a third party." *Id.* at 345.  After looking at the assignment provisions, the court found that the agreement was silent as to the consequences of an assignment.  Accordingly, "[b]ecause the operating agreement did not expressly provide that [the assignor's] obligations under the operating agreement should terminate upon assignment and [the contracting party] did not expressly release [the assignor] following the assignment," the court concluded that the assignor remained liable under the agreement. *Id.* at 347.

Applying *Seagull* to the facts, the Court finds that Timberblinds also remains liable under the Agreements.  Like *Seagull*, the Agreements do not expressly provide for the consequences from the assignment of a party's interest.  Indeed, "[n]owhere do they mention the subject of release or the consequences which are to follow the assignment . . . ." *Id.* at 346.  Further, like the assignor in *Seagull*, Hunter Douglas "reads far too much into [the Agreements'] provisions." *Id.* Indeed, contrary to Hunter Douglas' assertion, that the Agreements were assignable without Menendez's approval is of no consequence. Rather, the dispositive issue is not whether Timberblinds could assign the Agreements, but whether the Agreements provide for the consequences of such assignment.  And the contract is silent as to the latter.  Thus, under *Seagull*, since the Agreements do not expressly provide that Timberblinds' obligations under the Agreements should terminate upon assignment, Timberblinds remains liable under the Agreements "unless impliedly released" by Menendez. *See id*. at 347.

Accordingly, the Court now turns to examine whether the Agreements' "subject[s] or other circumstances [] indicate that obligations were not intended to survive the assignment." *Id*.  For instance, in *Seagull*, the court, looking to the Restatement, provided an example of when this might

20

occur: "a promise to maintain a dam on one's property to provide a certain water level for a neighbor would cease upon the conveyance of the land." *Id.* Here, Hunter Douglas argues, rather conclusory, that the facts of this case show that "Timberblinds was at least impliedly relieved of its duties or liability under the assigned contracts" (Dkt. #18 at pp. 8–9).  In addition, in its sur-reply, Hunter Douglas asserts that because Menendez "consistently looked to Hunter Douglas for performance" and "chose to bring suit in this District only against Hunter Douglas, . . . an intent to release Timberblinds of liability can be properly inferred" (Dkt. #18 at p. 9).  However, the Court disagrees.

As noted, the Agreements do not expressly provide for the consequences of an assignment. Further, Hunter Douglas does not argue that other provisions or aspects of the Agreements demonstrate that the obligations under the Agreements were not intended to survive assignment. Instead, Hunter Douglas' argument focuses on Menendez's conduct after formation of the Agreements.  Hunter Douglas spends a paragraph pointing to acts of Menendez "from which an intent to release Timberblinds can be properly *inferred*" (Dkt. #18 at p. 9) (emphasis added). However, the Court declines to hold that Timberblinds was impliedly released from its obligations under the Agreements based on inferences as such a conclusion would be improper at this stage for several reasons.

To start, to establish improper joinder, the defendant must "put forward evidence that would negate a possibility of liability . . . ." *Travis*, 326 F.3d at 650.  And Hunter Douglas' argument that the Court can infer Menendez impliedly released Timberblinds does not negate a possibility of liability.  Moreover, at this stage, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [Menendez]'s favor." *Id.* at 649.  Certainly, whether Timberblinds was impliedly released from its obligations through its assignment of the Agreements to Hunter

21

Douglas remains highly disputed.  Thus, though Hunter Douglas argues that the facts of the case show that Timberblinds was impliedly released from its obligations, the Court cannot resolve this factual dispute in Hunter Douglas' favor.  Further, even under a summary inquiry, the type of evidence typically considered outside of the pleadings is affidavits and deposition testimony. *Hart*, 199 F.3d at 246–47.  Determining that Menendez could not establish a cause of action against Timberblinds based on inferences would be a far cry from the conclusive evidence typically presented and considered.

Accordingly, the Court finds that Timberblinds' assignment of the Agreements to Hunter Douglas did not relieve Timberblinds of its obligations under the Agreements.  Stated differently, Menendez is not precluded from asserting a breach of contract claim against Timberblinds though Timberblinds assigned its rights and obligations of the Agreements to Hunter Douglas.  As in *Seagull*, the assignment provisions in the Agreements do not expressly provide that Timberblinds' obligations under the agreement should terminate upon assignment. *See* 207 S.W.3d at 346.  Further, particularly considering the level of review at this stage, the circumstances do not indicate that Timberblinds was impliedly release from the Agreements.  Thus, as the assignor, Timberblinds, though it cannot bring suit against Menendez, still remains liable to Menendez under the Agreements.

Because Timberblinds remains liable under the Agreements, this case must be remanded.[9] Hunter Douglas has failed to meet its burden to show that Timberblinds was improperly joined— that Menendez has no reasonable possibility of recovery against Timberblinds. *See Smallwood*, 385 F.3d at 573; *see also Gasch*, 491 F.3d at 281–82 ("[A]ny doubt about the propriety of removal

---

[9] While the Court is cognizant of the fact that notions of judicial efficiency weigh in favor of the case not being remanded, that is not the guiding inquiry for the Court.  Further, while Menendez's choice to only sue Hunter Douglas and not Timberblinds for similar claims in another case in this District seems disingenuous, again, that is not the guiding question Court is tasked with resolving the motion to remand.

must be resolved in favor of remand."). Thus, because Menendez "can establish a cause of action against [Timberblinds] in state court," *Farias*, 925 F.2d at 871; *see Smallwood*, 385 F.3d at 573, Timberblinds was not improperly joined, and the Court must consider Timberblinds' citizenship as part of its diversity analysis. The Court's conclusion is also bolstered by the decisions of other courts in Texas who have likewise remanded or recommended remand after finding that an assignment did not preclude a plaintiff from asserting a breach of contract claim against the assignor. *See Mosser v. Flagstar Bankcorp, Inc.*, No. 4:19-cv-882, 2020 WL 6482975, at * 5 (E.D. Tex. June 15, 2020), *report and recommendation adopted*, No. 4:19-cv-882, 2020 WL 5757224 (E.D. Tex. Sep. 28, 2020); *Lindsey v. JPMorgan Chase Bank Nat'l Ass'n*, No. 3:12–CV–4535, 2013 WL 28968897, at *12–13 (N.D. Tex. June 13, 2013).

Because Timberblinds is presumably a Texas citizen, complete diversity does not exist in this case and removal under 28 U.S.C. § 1332 was improper. Since the Court lacks subject matter jurisdiction, remand is required. Accordingly, the Court need not consider whether Boleneus was also improperly joined.

## IV.    Award of Attorneys' Fees

In addition to remand, Menendez seeks an award of attorneys' fees pursuant to 28 U.S.C. § 1447(c) that were incurred as a result of Hunter Douglas' improper removal (Dkt. #8 at p. 18). The decision to grant or deny attorneys' fees under § 1447(c) is left to the district court's discretion. *Western Healthcare, LLC v. Nat'l Fire & Marine Ins. Co*., No. 3:16-cv-565, 2016 WL 7735761, at *2 (N.D. Tex. Dec. 28, 2016). However, "[i]t is not necessary to show that a removing defendant acted in bad faith or other ulterior motive to award attorneys' fees under § 1447(c)." *Id.* Rather, attorneys' fees should be awarded if the court finds that "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp*., 546 U.S. 132, 141 (2005).

For example, a removing party lacks an objectively reasonable basis "when binding precedent has squarely held that the avenue for removal upon which the party relies is foreclosed." *Stephens v. Lilith Fund for Reprod. Equity*, No. 5:20-cv-138, 2020 WL 8085006, at *23 (E.D. Tex. Nov. 2, 2020) (internal citations and quotations omitted), *report and recommendation adopted*, No. 5:20-cv-138, 2021 WL 90113 (E.D. Tex. Jan. 11, 2021).

Although the Court grants Menendez's motion to remand, the Court declines to award Menendez attorneys' fees incurred on the motion.  The Court finds that Hunter Douglas had an objectively reasonable basis to pursue the improper joinder argument.  In short, the assignment of the relevant Agreements in this case, coupled with the fact that the assignor was a subsidiary of the assignee, presented unique circumstances.  Further, as the Court noted, the law is unclear in this area. *Cf. Stephens*, 2020 WL 8085006, at *23 (noting that a party lacks an objectively reasonable basis for removal when binding precedent has squarely held that the avenue for removal upon which the party relies is foreclosed).  While Hunter Douglas' argument was ultimately unsuccessful, it was only after a well-presented attack complete with reasonable arguments and case law.  Thus, an award of attorneys' fees is not appropriate under these circumstances.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Remand (Dkt. #8) is hereby **GRANTED IN PART** and **DENIED IN PART**.  This case is hereby remanded to the 416th Judicial District Court of Collin County, Texas, as Cause No. 416-05650-2021.  Plaintiff's request for attorneys' fees is **DENIED**.

**IT IS SO ORDERED.**
**SIGNED this 4th day of March, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE